UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARIO D. BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16 CV 254 |
| | ) |
| FORT WAYNE POLICE | ) |
| DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Mario D. Bell, a *pro se* prisoner, filed an amended complaint (DE # 10) alleging that six Fort Wayne Police Officers used excessive force while arresting him on November 23, 2014. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

"A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." *Abbott v. Sangamon*

*Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), the question is "whether the totality of the circumstances" justifies the officers' actions. *Graham* at 396.

As a result of this arrest, Bell was convicted of Resisting Law Enforcement and being a Serious Violent Felon in Possession of a Firearm. *Bell v. State*, 57 N.E.3d 895 (Ind. Ct. App. 2016) (table). "In *Evans v. Poskon*, 603 F.3d 362 (7th Cir.2010), [the Seventh Circuit] addressed the ability of a plaintiff to proceed on a § 1983 excessive force claim where that plaintiff had been convicted of resisting arrest, and held that the plaintiff can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). Here is how the State Court described these events:

> At approximately 5:00 p.m. on November 23, 2014, Detective Greenlee was on patrol when he noticed a car in front of him without its headlights on. Because visibility was poor, Detective Greenlee decided to stop the car and, to that end, activated his lights. Detective Greenlee first engaged Bell, who was the only person in the car, through the passenger-side window and noticed that Bell's hands were shaking. Detective Greenlee also noticed that Bell was attempting to hurry the traffic stop along. Detective Greenlee identified Bell and determined that the car was not registered in Bell's name. As it happened, Bell had borrowed the car from Charlene Woods, his sister. Detective Grooms soon arrived to assist Detective Greenlee.

> Detectives Grooms and Greenlee consulted with each other, re-approached the car, and had Bell exit it. Detective Greenlee told Bell to speak with Detective Grooms, and, when Detective Grooms put his hand on Bell's shoulder and said, "I need you to stand right here," Bell ran. The detectives pursued, with Detective Grooms catching up to Bell as he hopped a fence. Detective Grooms fired his taser and administered a five-second charge to Bell, who was initially incapacitated but soon attempted to rise. By this time, Detective Greenlee had arrived and Detective Grooms tased Bell again so that Detective Greenlee would have time to climb over the fence. At this point, Detective Grooms thought that Bell might be suffering a seizure, and Detective Greenlee observed that Bell didn't look like a person who he'd tased before. Detective Greenlee handcuffed Bell in the front out of concerns for Bell's safety, and Detective Grooms called for immediate medical assistance.
>
> Detective Greenlee rolled Bell onto his side, and, approximately forty-five seconds later, Bell started to regain consciousness. By this time, additional back-up had arrived. Although he was told repeatedly to stay down, Bell used both of his hands to push up from the ground, despite being pushed down by three police officers. Bell was thrashing violently and forcibly resisting the officers efforts to keep him on the ground and handcuff him behind his back.
>
> Eventually, six officers joined in the attempt to subdue Bell, using various techniques to gain Bell's compliance. Detective Grooms delivered three knee strikes to Bell's thigh, which resulted in some temporary compliance. Officer John Drummer kicked Bell in the face after Bell grabbed his ankles and attempted to grab his gun. Eventually, the officers were able to force Bell's arms behind his back and handcuff him.

*Bell v. State*, 57 N.E.3d 895, *1-2 (Ind. Ct. App. 2016) (table) (brackets citations and quotation marks omitted).

In the complaint, Bell does not dispute that he ran from the officers, but argues that it was an unreasonable and excessive use of force for Detective Grooms to have used his taser to stop him. "Factors relevant to the reasonableness inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest

3

by flight.'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) *quoting Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, the officers stopped Bell for driving without his headlights on. There is no indication that they had probable cause to believe that he had committed any other offense when he decided to run away from them. Neither is there any indication that by running away from them he posed an immediate threat to their safety or anyone else. Nor is there any indication that he was actively resisting arrest or attempting to evade arrest by running because he was not under arrest and there is no indication that the officers were trying to arrest him. Based on these facts, Bell has plausibly alleged that Detective Grooms used excessive force by tasing him.

Bell also alleges that all six defendants used excessive force against him after he was handcuffed and on the ground. He alleges that he did not fight back and was only struggling to breathe. However, these allegations contradict the facts necessary to support his conviction for Resisting Law Enforcement and he "can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). Therefore the court must accept that for the purposes of this lawsuit he violently and forcibly resisted the police. He kicked, pushed, wrestled, and fought with them. He grabbed at them and attempted to gain control of a gun during the struggle. It is in light of his actions during the fight that it must be determined whether he has plausibly alleged that the defendant officers were objectively unreasonable when they held him down,

4

punched him in the groin, struck him in the knee, tased him three more times, and kicked him in the head to prevent him from grabbing a gun.

> It is an objective inquiry, the dispositive question being whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner, irrespective of the officer's underlying intent or motivation. In answering this question, we remain cognizant of the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. As a result, we give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations.

*Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724–25 (7th Cir. 2013) (quotation marks and citations omitted). Here, where Bell was continuing to fight and trying to gain control of a gun, he has not plausibly alleged that the defendants' uses of force against him were objectively unreasonable. They were fighting to prevent him from getting a gun with which he could have killed them. His attempts to gain access to deadly force demonstrate that their use of non-lethal force to stop him was not unreasonable. Therefore these claims will be dismissed.

Finally, Bell alleges that the Fort Wayne Police Department failed to train or supervise Detective Grooms. "An allegation of a 'failure to train' is available only in limited circumstances." *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). This is not such a case. A failure to train claim requires that "the policymakers had acquiesced in a pattern of constitutional violations." *Id.* Here, the complaint makes no mention of any prior instances where Detective Grooms, or any other Fort Wayne Police Officer, improperly used his taser. Neither does it provide any

5

facts about why or how the Department's training or supervision was inadequate. Rather, it merely makes the conclusory allegation that they were inadequate. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*citing Twombly*, 550 U.S. at 556). "[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Therefore the failure to train claim will be dismissed.

For these reasons, the court:

(1) **GRANTS** Mario D. Bell leave to proceed against Detective Martin Grooms in his individual capacity for compensatory and punitive damages for using excessive force against him with his taser on November 23, 2014, in violation of the Fourth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Fort Wayne Police Department, John Greenlee, John D. Drummer, George Nicklow, Robert Hollo, and Thomas L. Strausberger;

(4) **DIRECTS** the clerk and the United States Marshals Service to issue and serve process on Detective Martin Grooms with a copy of this order and the amended complaint (DE # 10) as required by 28 U.S.C. § 1915(d); and

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Detective Martin Grooms respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: March 23, 2017

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT