UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARIO D. BELL,

    Plaintiff,

    v.

MARTIN GROOMS,

    Defendant.

CAUSE NO.: 3:16-CV-254-JD

OPINION AND ORDER

Mario D. Bell, a prisoner without a lawyer, is proceeding in this case "against Detective Martin Grooms in his individual capacity for compensatory and punitive damages for using excessive force against him with his taser on November 23, 2014, in violation of the Fourth Amendment . . .." ECF 17 at 6. Detective Grooms filed a motion for summary judgment which is now fully briefed. ECF 62, 71, and 72.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durfiinger*, 518 F.3d 479, 484 (7th Cir. 2008).

As a result of the events related to his interactions with Detective Martin Grooms on November 23, 2014, Bell was charged and convicted of several crimes: "Level 4 felony possession of a firearm by a serious violent felon ("SVF"), Level 6 felony resisting law enforcement, Level 6 felony theft, Class A misdemeanor resisting law enforcement, and Class B misdemeanor marijuana possession. A jury found Bell guilty as charged." *Bell v. State*, 57 N.E.3d 895, *1 (Ind. Ct. App. 2016) (table).

"In *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), [the Seventh Circuit] addressed the ability of a plaintiff to proceed on a § 1983 excessive force claim where that plaintiff had been convicted of resisting arrest, and held that the plaintiff can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). Therefore before reviewing the facts presented by the parties, the court must examine the facts as determined by the State criminal court.

> At approximately 5:00 p.m. on November 23, 2014, Detective Greenlee was on patrol when he noticed a car in front of him without its headlights on. Because visibility was poor, Detective Greenlee decided to

> stop the car and, to that end, activated his lights. Detective Greenlee first engaged Bell, who was the only person in the car, through the passenger-side window and noticed that Bell's hands were shaking. Detective Greenlee also noticed that Bell was attempting to hurry the traffic stop along. Detective Greenlee identified Bell and determined that the car was not registered in Bell's name. As it happened, Bell had borrowed the car from Charlene Woods, his sister. Detective Grooms soon arrived to assist Detective Greenlee.
>
> Detectives Grooms and Greenlee consulted with each other, re-approached the car, and had Bell exit it. Detective Greenlee told Bell to speak with Detective Grooms, and, when Detective Grooms put his hand on Bell's shoulder and said, "I need you to stand right here," Bell ran. The detectives pursued, with Detective Grooms catching up to Bell as he hopped a fence. Detective Grooms fired his taser and administered a five-second charge to Bell, who was initially incapacitated but soon attempted to rise. By this time, Detective Greenlee had arrived and Detective Grooms tased Bell again so that Detective Greenlee would have time to climb over the fence.

*Bell v. State*, 57 N.E.3d 895, *1 (Ind. Ct. App. 2016) (table) (brackets, citations, and quotation marks omitted).

Though the parties do not include every one of those facts in their filings, as explained in *Helman*, Bell cannot dispute those facts. *See* ECF 62 and 71. In addition to those facts only a few other undisputed facts are necessary to resolve this case. After Detective Greenlee returned to his police car with Bell's license and registration, he "saw on the local computer Spillman system that Bell was a suspect in several investigations involving pursuits, party armed calls, assaulting officers, and a shooting." Detective Greenlee Declaration at ¶ 8, ECF 62-1 at 2. Bell acknowledges his "prior criminal history shown by the Spillman system . . . showed that [he] was suspected in several investigations." Bell's Memorandum of Law, ECF 71 at 2. "Prior to [Detective Greenlee] returning to Bell's vehicle, [he] made Detective Martin Grooms

3

aware of Bell's prior history . . .." Detective Greenlee Declaration at ¶ 9, ECF 62-1 at 2. Bell acknowledges that "Detective Grooms approached [him] to conduct an outer clothing pat down for officer safety due to [his] having prior weapon involvement. Bell's Memorandum of Law, ECF 71 at 6. Finally, "[b]oth Detective Grooms and [Detective Greenlee] were wearing full police uniforms and [after Bell took off running, they] called for Bell to stop. Bell refused to stop." Detective Greenlee Declaration at ¶ 11, ECF 62-1 at 2. Bell acknowledges that when "Detective Grooms placed one hand on [his] shoulder [he] took off." Bell's Memorandum of Law, ECF 71 at 6. Bell does not deny the officers called for him to stop. He acknowledges "Bell refused to stop." *Id*.

Detective Grooms argues he has qualified immunity because a reasonable officer at the time would not have known it was a violation of the Fourth Amendment to use a taser under these circumstances. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citations omitted). The United States Supreme Court recently reiterated the standard in qualified immunity cases:

> Under our cases, the clearly established right must be defined with specificity. This Court has repeatedly told courts not to define clearly established law at a high level of generality. That is particularly important in excessive force cases, as we have explained: Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus

4

police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. It does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*City of Escondido, Cal. v. Emmons*, 586 U.S. ___, ___; 139 S. Ct. 500, 503 (2019) (quotation marks, ellipsis, citations, and brackets omitted).

Here, Bell was lawfully stopped for driving without his headlights on in a vehicle that was not registered to him. Bell was a suspect in several incidents involving weapons. When Detective Grooms tried to verify that Bell did not have weapons on him, Bell ran. By doing so, Bell committed a Class A misdemeanor in violation Indiana Code 35-44.1-3-1(a)(3) which provides that:

> A person who knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop . . . commits resisting law enforcement, a Class A misdemeanor . . .."

*Id.* (effective July 1, 2014, to June 30, 2016).

The only question here is whether it was clearly established that using a taser to stop a suspect from fleeing in such a circumstance was a violation of the Fourth Amendment. "A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable'

5

in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), the question is "whether the totality of the circumstances" justifies the officers' actions. *Graham* at 396. "Factors relevant to the reasonableness inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) *quoting Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018) *quoting Graham*, 490 U.S. at 396-97.

The Seventh Circuit has found that tasers are generally nonlethal and "the use of a taser, like the use of pepper spray or pain-compliance techniques, generally does not constitute as much force as so-called impact weapons, such as baton launchers and beanbag projectiles. The use of a taser, therefore, falls somewhere in the middle of the nonlethal-force spectrum." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 726 (7th Cir. 2013) (citation omitted).

Bell was ultimately convicted of three felonies, but at the time Detective Grooms used his taser, all he knew was Bell had committed a misdemeanor. "[C]ourts generally

6

hold that it is unreasonable for officers to deploy a taser against a misdemeanant who is not actively resisting arrest." *Id.* at 730. *See also Lewis v. Downey*, 581 F.3d 467, 478–79 (7th Cir. 2009) (denying qualified immunity to officers who applied a Taser to a pretrial detainee lying prone on a bed, weakened, and docile in response to his refusal of an order to get out of bed); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 487 (7th Cir. 2011) (noting prior cases establishing the illegality using pepper spray on an arrestee who was handcuffed and offering no physical resistance); *Sallenger v. Oakes*, 473 F.3d 731, 741–42 (7th Cir. 2007) (noting that a significant factor in denying qualified immunity was the fact that force was applied after the arrestee was handcuffed).

Here however, Bell was not handcuffed. He was actively resisting by running away and jumping a fence. Detective Grooms knew Bell was a suspect in several cases involving weapons. It was unknown if he had a weapon at the time because he had refused a pat down search by running. Detective Grooms chased him and ordered him to stop. He did not use his taser until after Bell jumped a fence which made continued pursuit more difficult.

Bell has not identified any caselaw finding a Fourth Amendment violation when a taser is used under similar circumstances. It is unclear whether Bell understood he needed to so. Nevertheless, the court has researched the cases of the United States Supreme Court, the Seventh Circuit, the district courts in Indiana, and the Indiana appellate courts. No cases were found which held these facts would constitute a Fourth Amendment violation. As such, the court must conclude that a reasonable officer in

November 2014 would not have known that it was a violation of the Fourth Amendment to use a taser under the circumstances of this case.

For these reasons, the motion for summary judgment (ECF 62) is GRANTED in favor of Martin Grooms because he has qualified immunity. The clerk is DIRECTED to enter judgment accordingly.

SO ORDERED on July 31, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT